In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00338-CV

_____

IN THE INTEREST OF E.C.C.

On Appeal from the County Court at Law No. 3
Montgomery County, Texas
Trial Cause No. 15-09-09360-CV

**OPINION**

Appellant, the father of the minor child E.C.C.,[1] appeals from an order terminating his parental rights. The jury found, by clear and convincing evidence, that statutory grounds exist for termination of appellant's parental rights, and that termination of appellant's parental rights is in the best interest of E.C.C. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D), (E), (H), (N), (Q), (2) (West Supp. 2017). In two appellate issues, appellant argues that (1) the State's failure to prepare a family

_____

[1]We will refer to the minor child as "E.C.C." We will refer to the child's father as "appellant[.]"

1

plan of service denied him due process and (2) the trial court lacked jurisdiction. We affirm the trial court's order.

## PERTINENT BACKGROUND

CPS caseworker Veronica Stubblefield testified that she received the case involving E.C.C. when it was transferred from Anderson County to Montgomery County in December of 2016. Stubblefield explained that E.C.C. was removed from her grandmother's home in July 2016 because multiple family members were using drugs around her, and there was also family violence. According to Stubblefield, E.C.C. tested positive for methamphetamine, as did two family members.

Stubblefield testified that appellant was incarcerated when E.C.C. was removed, and appellant had been incarcerated for possession of methamphetamine since 2014, before E.C.C.'s birth. Stubblefield testified that appellant was sentenced to ten years of confinement, and he had been denied parole in April 2017. Stubblefield explained that appellant has never seen or spoken to E.C.C., and that appellant would have to be released from prison to be considered as a placement for E.C.C. According to Stubblefield, CPS does not usually set visitation with parents who are incarcerated. Stubblefield testified that she did not know whether the trial court's order naming CPS the temporary managing conservator of E.C.C. was sent to appellant.

2

Stubblefield testified that although CPS policy and the Family Code require a service plan to be developed for each parent within a specific period of time, a service plan was not timely prepared for appellant. According to Stubblefield, the caseworker from Anderson County informed appellant regarding classes he could take in prison. Stubblefield explained that she spoke with appellant by phone, and appellant informed her that he did not have a service plan, so she eventually prepared a service plan for appellant approximately six weeks before the permanency hearing. According to Stubblefield, the service plan stated that it would be amended once appellant is released from prison and set forth some items that might be required of appellant, such as psychological evaluation and drug screening, among other things. Stubblefield testified that she never attempted to return the child to appellant because appellant is incarcerated. Stubblefield explained that CPS was not seeking termination due to failure to complete a service plan.

Appellant testified that prior to his incarceration, his "source of income was through the illegal sale of drugs." According to appellant, when he was arrested in April of 2014, he had been living in motels for two or three weeks, and prior to that time, he was in a faith-based drug rehabilitation center. Appellant explained that he is incarcerated because he was convicted of possession of methamphetamines. In addition, appellant testified that he was arrested when E.C.C.'s mother handed him

3

a bag of methamphetamine and instructed him to run, and appellant explained that he told E.C.C.'s mother, "you better get clean and take care of my baby." Appellant explained that E.C.C.'s mother had previously told him she might be pregnant, but they were not sure "because she has irregular periods due to her use of methamphetamines." Appellant testified that because he is incarcerated, he was not present when E.C.C. was born, and he has never held, fed, or spoken to the child. Appellant testified that he has been denied parole twice, and he explained that his projected release date is June 13, 2018.

According to appellant, when he was notified that the child was in the care of CPS, he asked for a family service plan because legal research he had done in prison indicated that he should have a family service plan. Appellant stated that he has "[s]till never received one." Appellant asked the trial judge not to terminate his parental rights because he wanted the child to be placed with appellant's mother. According to appellant, CPS did not give his family a fair chance to have the child placed with them, and no one has explained why. Appellant opined that his parents could provide a safe, stable environment for the child. Appellant testified that he does not feel that he has abandoned the child, and he explained that during his incarceration, he has written to the child and tried to support the child mentally and spiritually.

4

Court Appointed Special Advocate ("CASA") supervisor Marilyn McQueeny testified that CASA is a volunteer-driven organization whose job is to make recommendations to the court regarding the best interest of the child, with the ultimate goal of insuring that every child is placed in a safe, stable, nurturing permanent home. McQueeny explained that CASA's recommendation for E.C.C.'s best interest was termination of both parents' rights and to allow E.C.C. to be adopted. CASA volunteer Shari Wood testified that E.C.C. had grown happier and more trusting of people in E.C.C.'s current placement, and Wood recommended termination of both parents' rights and adoption of E.C.C.

ISSUE ONE

In his first issue, appellant contends the State's failure to prepare a family plan of service for him denied him due process. Appellant cites the provision of the Family Code that provides that CPS shall file a service plan not later than the forty-fifth day after the date the court renders a temporary order appointing CPS as the child's temporary managing conservator. *See* Tex. Fam. Code Ann. § 263.101 (West Supp. 2017). In addition, appellant cites other provisions of the Family Code that require CPS to designate personnel to ensure compliance with the service plan, govern what a service plan must contain, provide for the development of a service plan jointly by the child's parents and a CPS representative, require that the court

5

must evaluate the parties' compliance with the service plan, and require that CPS must prepare a permanency plan that includes compliance with the service plan. *See* Tex. Fam. Code Ann. § 263.005 (West 2014); *Id*. §§ 263.102, 263.103(a), 263.303(b), 263.3025(b) (West Supp. 2017). Appellant acknowledges in his brief that "[c]ase law does not provide a case on point addressing the complete lack of a service plan as a fundamental due process issue." Appellant asserts that, read together, the statutes "clearly demonstrate that the legislative intent is for due process to be afforded to parents in CPS cases."

The record reflects that appellant's rights were terminated for knowingly allowing E.C.C. to remain in conditions or surroundings that endangered E.C.C.'s physical or emotional well-being; engaging in conduct or knowingly placing E.C.C. with persons who engaged in conduct that endangered E.C.C.'s physical or emotional well-being; voluntarily, with knowledge of the pregnancy, abandoning E.C.C.'s mother during her pregnancy and continuing through the birth, as well as failing to support or provide medical care for the mother during the period of abandonment before E.C.C.'s birth, and remaining apart from E.C.C. or failing to support E.C.C. since birth; constructively abandoning E.C.C.; and knowingly engaging in criminal conduct that resulted in his conviction and imprisonment and inability to care for E.C.C. for not less than two years. *See* Tex. Fam. Code Ann. §

6

161.001(b)(1)(D), (E), (H), (N), (Q), (2). We need not determine whether the Family Code's provisions requiring the State to provide Appellant with a service plan raises a fundamental due process issue, because the trial court's order terminating appellant's parental rights was not based upon any failure by appellant to complete a service plan, and any such error would be harmless. *See id.* Accordingly, we overrule issue one.

## ISSUE TWO

In his second issue, appellant contends that the trial court lacked jurisdiction because the trial court entered an order establishing the parent-child relationship between appellant and E.C.C., and although CPS also filed a petition to terminate appellant's parental rights, CPS did not demonstrate materially and substantially changed circumstances or file a motion to modify the order. As support for his argument, appellant cites sections 155.001(a) and 155.003(a) of the Family Code. *See id.* § 155.001(a) (West Supp. 2017) (providing that a trial court acquires continuing, exclusive jurisdiction in connection with a child on rendition of a final order); *Id.* § 155.003(a) (West 2014) (providing that a court with continuing, exclusive jurisdiction may modify its order regarding conservatorship and possession of the child, access to the child, and support of the child). Section 156.101(a) of the Family Code provides that the trial court may modify an order

regarding conservatorship, possession, or access if modification is in the child's best interest and the circumstances of the child, a conservator, or other affected party have materially and substantially changed. *Id.* § 156.101(a) (West 2014).

According to appellant, two conflicting "live" orders now exist: one adjudicating him as E.C.C.'s father, naming him joint managing conservator, and ordering him to pay half of any medical expenses not covered by insurance; and another order terminating his parental rights. Appellant asserts that the Family Code "does not give a court of continuing jurisdiction the ability to do anything other than modify its original order."

Section 161.001 of the Family Code, which provides for involuntary termination of parental rights, does not require evidence of a material and substantial change. *See In the Interest of N.R.T.*, 338 S.W.3d 667, 673 (Tex. App.—Amarillo 2011, no pet.); *see also* Tex. Fam. Code Ann. § 161.001. A suit to terminate parental rights differs from a suit for modification. *See Slatton v. Brazoria Cty. Protective Servs. Unit*, 804 S.W.2d 550, 554 (Tex. App.—Texarkana 1991, no writ). "[T]he distinction between section 156.101 governing a modification proceeding, and section 161.001 governing a termination proceeding, is more than procedural or semantic." *In the Interest of C.T.*, No. 12-09-00401-CV, 2010 WL 4880631, at *4 (Tex. App.—Tyler Nov. 30, 2010, no pet.) (mem. op.). A modification proceeding

8

and a termination proceeding involve different issues and have different standards of proof. *Id*. Unlike the consequences of modification, the consequences of termination are permanent. *Id*. at *5. In addition, while a modification proceeding determines whether circumstances of the child or a conservator have materially and substantially changed and whether modification is in the child's best interest, a termination proceeding determines whether the parent engaged in any of the acts or omissions listed in section 161.001 and whether termination is in the child's best interest. *Interest of C.T.*, 2010 WL 4880631, at *4. Furthermore, a trial court's order terminating parental rights must be supported by clear and convincing evidence, but an order modifying conservatorship is simply reviewed for abuse of discretion. *Id*.

Because the statutory schemes for modification and termination differ as explained above, we conclude that the trial court did not lack jurisdiction to enter an order terminating appellant's parental rights. Accordingly, we overrule issue two. Having overruled both of appellant's issues, we affirm the trial court's order terminating appellant's parental rights to E.C.C.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on November 21, 2017
Opinion Delivered January 18, 2018

Before McKeithen, C.J., Kreger and Johnson, JJ.

9