In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-23-00364-CV
IN THE INTEREST OF L.K.S.

On Appeal from the 1st District Court
Jasper County, Texas
Trial Cause No. 40046

## MEMORANDUM OPINION

This is an appeal of the trial court's "Order in Suit to Modify Parent-Child Relationship" pertaining to L.K.S. ("Lisa"),[1] the child who is the subject of the underlying lawsuit. The trial court denied the Petition to Modify filed by Appellant ("Willis"), the child's father, and the trial court denied the Counter-Petition to Modify filed by Appellee ("Sandra"), the child's mother. Lisa was about four-and-a-half years old at the time the trial court signed the order being appealed. In a single

---

[1] We use pseudonyms to refer to the child and parents. *See* Tex. Fam. Code Ann. § 109.002(d).

1

issue, Appellant argues that the trial court abused its discretion in failing to expand the standard possession order. The Appellee did not file a cross-appeal. We affirm.

Background

Willis and Sandra married in May of 2014 and divorced in July of 2019. They have one child, Lisa, who was about five months old at the time the couple divorced. The divorce proceedings occurred in Hardin County, Texas. In June of 2021, Sandra filed a motion to transfer the matter to Jasper County, stating that Jasper County was Lisa's primary residence. In April of 2022, the Hardin County District Court transferred the matter to Jasper County.

In May of 2022, Willis filed a Petition to Modify Parent-Child Relationship (the petition to modify), seeking, in relevant part, to obtain extended periods of possession of Lisa and asserting that the requested modification was in the best interest of Lisa. The order Willis wanted the trial court to modify provided, in relevant part, that Willis's weekend periods of possession shall be:

> On weekends that occur during the regular school term, beginning at 6:00 p.m., on the first, third, and fifth Friday of each month and ending at 6:00 p.m. on the following Sunday.

The petition to modify filed by Willis asks that he be allowed to pick up Lisa after school on Thursday afternoon and return her to school on Monday morning.

Sandra filed a general denial Answer and a Counterpetition to Modify Parent-Child Relationship. Therein, she alleges that the summer visitation schedule was

"unworkable[,]" and she states that she and Willis would enter into a written agreement containing provisions for modification of the order providing for possession of and access to the child. The trial court held a hearing on the requests for modification on June 13, 2023.

Evidence at the Hearing

At the hearing, Willis's counsel explained to the trial court that Willis was asking for an expanded standard possession, a change to summer visitation with five additional days in June and July, and a meeting place halfway between the parties for summer and holidays. Sandra's counsel explained to the trial court that Willis was asking for expanded possession, but the parties live more than fifty miles apart and expanded possession was not in Lisa's best interest as she was only four-and-a-half years old. Sandra's counsel further stated that Sandra was fine with allowing Willis an additional five days of visitation in June and July. Sandra's counsel also stated that the parties had agreed to pickup and drop-off at Sandra's residence and that Sandra wanted to keep that the same. The parties agreed that Willis and Sandra live fifty-four miles apart.

Willis's Testimony

Willis testified that he lives in Silsbee, Texas, and he works as a process operator for ExxonMobil. Willis explained that he works shift work, which causes him to miss his time with Lisa two Thursdays a month, and he wanted to be able to

pick Lisa up from and drop her off at school plus have the extra time overnight with her. According to Willis, if he works overtime, he will sometimes miss a half day with Lisa, and he occasionally missed having her on the fifth weekend of the month due to his work schedule. Willis described his shift schedule as follows:

> . . . I work four days. I'm off for seven. I work four nights. I'm off for a three-day weekend or a three-day [period] during the week, a Tuesday, Wednesday, Thursday. I work a three-day weekend. I'm off Monday. I work Tuesday, Wednesday, and Thursday night; and I'm off the weekend to start my four-day set.

Willis testified that at his house, "we ride horses, we tend the garden[,] we [] raise her baby sisters." Willis believed it would be in Lisa's best interest for her to spend more time with him and his family. Petitioner's Exhibit 1 was admitted into evidence, which Willis described as "a daddy-daughter photo album."

Willis testified that four other children live at his home, including two stepchildren, ages thirteen and twelve, and two younger children ages eighteen months and five months who are his children with his current wife. Willis explained that he did not currently pick Lisa up from school, and he wanted to pick Lisa up from school on Thursday and return her on Monday morning, which would give him more time with Lisa, he could help her with homework, and it would help Lisa have a better evening routine. When asked what grade level Lisa would be entering during the next school year, Willis replied," [g]oing by her age, I would say pre-K." Willis

4

also testified that picking up Lisa at school would be better because there would be "less face-to-face interference" with Sandra.

Willis testified that he was asking for the ability to return Lisa to school on Monday morning instead of on Sunday night so she could have more time with him and his family. Willis further testified that, because his parents live next door to him, Lisa would benefit from having more time with her grandparents. Willis stated that Lisa enjoys her time at his house now, and he did not think Lisa would suffer any anxiety, stress, or other ill effects from the increased visitation schedule he sought.

According to Willis, it takes about "[r]oughly 48, 50 minutes[]" to get from his house to the school in Jasper, the distance from his house and Lisa's school is "about 50.3 miles[,]" a round-trip to and from Jasper (where Lisa lives) takes about half a tank of gasoline, and a tank of gas costs him about $190 for gasoline. Willis would plan to leave at about 6:50 a.m. to get Lisa to school on time. He also testified that, if he were not able to take Lisa back to Jasper for school, his mother, grandmother, or wife could do so. Willis also testified that he was asking for drop-off to be in Kirbyville, which is about halfway between his home and Jasper, because "it would save money and time in the car for each party."

On cross-examination, Willis testified that the circumstances of where he, Sandra, and Lisa live have not changed since they entered into the mediated divorce settlement agreement that became part of the final divorce decree. He also agreed

5

that, under the settlement agreement, he had agreed to pick up and drop off at Sandra's house. He also agreed that Sandra had worked with him regarding his work schedule so that he could maximize his time with Lisa. Additionally, he agreed that an expanded schedule would require him to make the trip four times a week instead of two times under the then-current schedule. According to Willis, Lisa usually wakes up at about 6:30 a.m. at his house, and he did not see a benefit to her in having an extra fifty minutes' sleep. Willis testified that Lisa "made three trips a weekend until she was 6 months old [as a] newborn in a car seat for eight hours a weekend." Willis agreed that all he was asking the trial court to change was that the two weekends a month he gets with Lisa be increased to include pickup on Thursday after school and return to school on Monday morning and for fifteen-day periods of visitation during the summer. Willis did not think it would be a problem for him to be working and not at home on a day that Lisa was at his house because she would still get to be with her siblings, stepmother, grandparents, and great-grandparents.

On redirect, Willis testified that since the divorce, both his and Sandra's life circumstances had changed in that they were in better financial circumstances, they both had other children, and Lisa was in school. Willis did not believe an expanded possession schedule would have negative effects but rather it would result in increased time and quality of time that Lisa would spend with his family.

Sandra's Testimony

Sandra testified that she works Tuesday through Thursday for an orthodontist. According to Sandra, Lisa was in pre-K4 at First Baptist school in Jasper, and Sandra testified she anticipates Lisa will stay at the same school for kindergarten. Sandra testified that it would be a problem for Willis to have an expanded possession schedule because Lisa, at four years old, would have to get up much earlier to get to school. Sandra further testified that, when Lisa is at her house, Lisa normally wakes up at 8:30 or 9 a.m. when it is not a school day. On the days that Sandra works, Sandra wakes Lisa up at 7:30 a.m. so Sandra can drop Lisa off at Sandra's mother's house. She also testified that Lisa's bedtime was 9:30 p.m. on non-school days and it would be 8:30 p.m. at the latest when school started. Sandra also testified that Lisa was not "a morning person[,]" and that Lisa typically sleeps another hour or two after Sandra drops Lisa off at Sandra's grandmother's house at about 7:45 a.m.

Sandra was concerned about the effect of expanding Willis's possession schedule on Lisa's behavior, sleep, and her schedule in general. Sandra testified that she was not concerned about Willis spending more time with Lisa, but the issue she has is the travel time, and whether Lisa would get adequate rest with having to drive a long way back and forth. When asked whether time driving with Lisa could be quality time, she replied, "I guess so. [] If she's not asleep." The following exchange occurred during questioning by Willis's counsel:

Q. . . . So do you think that increase in time [with Willis] is outweighed by the fact that [Lisa] might be tired or it might affect her school?

A. I can't answer that because I'm not sure. This is her first year in school. She hasn't started yet. I'm not sure how it will affect her.
. . . .
Q. So it's just the 50-minute drive that's the problem?

A. It is the drive and how - - the unknown. . . . the fact that we don't know how she's going to react to it. We don't know how she's going to do with school. That's a long drive, and that's a lot of back and forth trips for a toddler for school.

On cross-examination, Sandra agreed that Willis had told her more than once that "riding in the car is not spending quality time with his child[.]" Sandra testified that she had "no clue[]" how Lisa would react to driving fifty miles back to school after visitation with Willis because she had not yet been to school and on a "set schedule[.]" When asked why she did not think having overnight visitation with Willis on Thursday nights was in Lisa's best interest, Sandra testified as follows:

Well, first and foremost again is the issue with her driving down there just to spend the night and spend the evening and then driving back to school the next morning. He already stated that he would have to leave or somebody would have to leave by 6:50 to get her to school on time. Secondly, again, if he's working, according to his work schedule, and he's not spending that quality time with her anyway, I don't see the point of her even being there.

Sandra agreed that it was just "too early, too soon" for a four-year-old to be doing that much traveling back and forth during the school week when it was uncertain how it would affect her, and Sandra believed that much traveling for a four-year-old was not in Lisa's best interest.

8

The Trial Court's Ruling

On August 23, 2023, after the hearing, the trial court denied Willis's request for expanded visitation periods and request to change the pickup and surrender location of the child for periods of possession. Willis then filed a Request for Findings of Fact and Conclusions of Law and a Notice of Past-Due Findings of Fact and Conclusions of Law. The trial court then entered Findings of Fact and Conclusions of Law, which stated, in relevant part:

> 6. The parties were divorced on July 1, 2019 in Hardin County District Court, by entering an Agreed Final Decree of Divorce that contains the following provisions:
>     a. Modified Possession Order detailing a step-up possession schedule; and
>     b. "All exchanges of the child shall take place at the home of [Sandra]."
> 7. On May 24, 2022, a Petition to Modify the Parent-Child Relationship was filed by [Willis] requesting the following relief:
>     a. Petitioner requests the court to order that Petitioner shall have extended standard possession of the child.
>     b. Petitioner requests the court to modify summer visitation to be in the best interest of the child.
> 8. An agreement to modify summer visitation was presented and approved by the Court.
> 9. The periods of possession comply with the Standard Possession Order.
> 10. Petitioner's request for extended standard possession was denied because it was not in the best interest of the child.
> 11. The following factors were considered in rendering the possession order for [Lisa]:
>     a. The age of the child;
>     b. The emotional and physical needs of the child now and in the future; and
>     c. The distance between the residences of the parties.

9

12. The Court finds that Petitioner agreed to the pickup and surrender of the child in the Final Decree of Divorce dated July 1, 2019.
13. The Court finds that Petitioner's Pleadings do not support a request to change the pickup and surrender of the child.
14. The Court does not find a material change in circumstances sufficient to justify modification of the pickup and surrender of the child.

This appeal followed.

## Issue

Appellant argues that under section 153.317 of the Family Code, non-possessory parents have a right to elect an expanded standard possession schedule depending on the noncustodial parent's distance from the custodial parent's residence. *See* Tex. Fam. Code Ann. § 153.317. According to Appellant, he lives "marginally further away from Respondent than the 50 miles as described by the statute," a distance he characterizes as "inconsequential" because the statute provides that non-possessory parents who live within 100 miles of the possessory parent may seek expanded possession if it comports with the child's best interest. Appellant argues that although Sandra was concerned that a drive of about 54 miles to and from school would make Lisa tired, "[n]o evidence was offered to support this speculation." Appellant also argues that Sandra would not object to expanded possession if Willis lived closer. According to Appellant, a trial court should not deny a parent expanded possession based on "possibilities" and "maybes" or based

on a hypothesis that the child might suffer "minor inconveniences" as a result of the expanded possession.

Standard of Review and Applicable Law

To be entitled to a modification, the party requesting the modification must prove (1) the modification requested is in the child's best interest, and (2) the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the prior order. *See* Tex. Fam. Code Ann. § 156.101(a)(1)(A). In a modification suit, whether the moving party has met the burden of establishing a material and substantial change is a threshold question. *See In re R.A.*, No. 09-20-00275-CV, 2022 Tex. App. LEXIS 7575, at *17 (Tex. App.—Beaumont Oct. 13, 2022, no pet.) (mem. op.) (citing *In re T.M.P.*, 417 S.W.3d 557, 563 (Tex. App.—El Paso 2013, no pet.)). Determination of a material and substantial change is fact specific and not controlled by a set of guidelines. *Id.* (citing *Arredondo v. Betancourt*, 383 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, no pet.)).

The trial court is given wide latitude in determining the best interests of a minor child, and we review a trial court's decision pertaining to a modification order under an abuse of discretion standard. *See id.* at *13 (citing *Smith v. Karanja*, 546 S.W.3d 734, 737 (Tex. App.—Houston [1st Dist.] 2018, no pet.)); *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re E.C.C.*, 539 S.W.3d 425, 429

11

(Tex. App.—Beaumont 2018, pet. denied). A trial court abuses its discretion if it acts arbitrarily or without reference to any guiding rules or principles. *See In re G.J.G.*, No. 09-21-00396-CV, 2023 Tex. App. LEXIS 9542, at **11-12 (Tex. App.—Beaumont Dec. 21, 2023, no pet.) (mem. op.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied)). A trial court does not abuse its discretion if its order is supported by some evidence of a substantial and probative character. *See In re L.J.L.*, No. 09-21-00286-CV, 2023 Tex. App. LEXIS 6568, at *12 (Tex. App.—Beaumont Aug. 24, 2023, no pet.) (mem. op.). In determining whether some evidence supports the decision, we review the evidence in the light most favorable to that order, and we indulge every presumption in its favor. *See In re G.E.D.*, No. 05-17-00160-CV, 2018 Tex. App. LEXIS 8, at **11-12 (Tex. App.—Dallas Jan. 2, 2018, no pet.) (mem. op.).

The factfinder "'is the sole arbiter of the witnesses' credibility and demeanor,'" and our review must defer to the trial court's factual determinations. *See In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (quoting *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible. *Id.* (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002. On appeal, we assess the trial court's best-interest finding by using the *Holley* factors. *See In re D.E.T.*, No. 09-22-00197-CV, 2023 Tex. App. LEXIS 5811, at **18-19 (Tex. App.—Beaumont Aug. 3, 2023, no pet.) (mem. op.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)). The *Holley* factors include (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child in the present or future; (4) the parental abilities of the individuals involved; (5) the programs available to those individuals to promote the child's best interest; (6) the plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371-72. The *Holley* factors are not exclusive, and the evidence that the factfinder considers in making a best-interest decision need not address all the *Holley* factors. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re K.R.K.-L.H.*, 671 S.W.3d 761, 770 (Tex. App.—Beaumont 2023, pet. denied). The factfinder may consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *See In re K.P.*, No. 09-22-00049-CV, 2022 Tex. App. LEXIS 5787, at

13

\*\*29-30 (Tex. App.—Beaumont Aug. 11, 2022, pet. denied) (mem. op.) (citing *In re R.J.*, 568 S.W.3d 734, 751-52 (Tex. App.—Houston [1st Dist.] 2019, no pet.)).

The standard possession order sets the minimum possessory rights of the parent who does not have the right to establish the child's primary residence. *See* Tex. Fam. Code Ann. § 153.312 (standard possession order for parents who live 100 miles or less apart). Section 153.317 provides for a trial court to expand the standard possession order for parents who live 100 miles or less apart "unless the court finds that the election is not in the best interest of the child[.]" *Id.* § 153.317(a) (referencing Tex. Fam. Code Ann. § 153.312, "Parents Who Reside 100 Miles or Less Apart"). In deviating from the standard possession order, the trial court must consider "the age, developmental status, circumstances, needs, and best interest of the child"; "the circumstances of the managing conservator and of the parent named as a possessory conservator"; and "any other relevant factor." *Id.* § 153.256.

The factfinder is the sole judge of credibility of the witnesses and the weight to be assigned to their testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The factfinder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *Id.* As such, reviewing courts must assume that the factfinder decided all credibility questions in favor of the findings, and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *Id.* at 819-20. We review a

trial court's findings of fact for legal sufficiency, and its conclusions of law under a de novo standard of review. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

Analysis

"[A] party's pleadings invoke the trial court's jurisdiction to render a judgment, [and] an order not supported by the pleadings is void for lack of jurisdiction." *In re P.M.G.*, 405 S.W.3d 406, 416-17 (Tex. App.—Texarkana 2013, no pet.); *see also Guillory v. Boykins*, 442 S.W.3d 682, 690 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Therefore, we begin our analysis by examining the trial court's findings that "Petitioner's Pleadings do not support a request to change the pickup and surrender of the child." As to the issue in this appeal, Willis's Petition to Modify pleaded as follows:

> 9. Modification of Possession and Access
>
> The order to be modified is not based on a mediated or collaborative law settlement agreement. The circumstances of the child, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified.
>
> Petitioner believes that the parties will enter into a written agreement containing provisions for modification of the order providing for possession of and access to the child.
>
> Petitioner requests the court to order that Petitioner shall have extended standard possession of the child.
>
> Petitioner requests the court to modify summer visitation to be in the best interest of the child.
>
> The requested modification is in the best interest of the child.

At the hearing on the petition, Willis agreed he was asking for his weekend visitations to permit him to be able to pick Lisa up from school on Thursday and return her to school on Monday morning. Sandra's counsel objected, "that's not what he pled for." After some discussion, Sandra's counsel stated, "I'm trying to figure out what they're asking for, Judge[]" and the trial court responded, "Okay. Well, ask him." Willis's counsel stated that he had "just told him." The court told the attorneys to "[g]o ahead[]" and "[a]sk questions."

Pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354-55 (Tex. 1995). As a reviewing court, we liberally construe the petition to include claims that reasonably may be inferred from the specific language used in the petition. *Id.* "[A] judgment must be supported by the pleadings, and if not so supported, it is erroneous. . .. Thus, a party may not be granted relief in the absence of pleadings to support that relief." *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983) (citations omitted); *see also* Tex. R. Civ. P. 301 (a court's judgment shall conform to the pleadings).

Sections 153.312 and 153.317 of the Family Code allow a trial court to alter the standard possession order for parents who live 100 miles or less apart. Tex. Fam. Code Ann. §§ 153.312, 153.317. Section 153.312 provides for possession of the child, in relevant part, as follows:

16

(1) on weekends throughout the year beginning at 6 p.m. on the first, third, and fifth Friday of each month and ending at 6 p.m. on the following Sunday; and
(2) on Thursdays of each week during the regular school term beginning at 6 p.m. and ending at 8 p.m., unless the court finds that visitation under this subdivision is not in the best interest of the child.

*Id.* at § 153.312(a)(1), (2). Section 153.317 provides for the following expanded possession times:

(1) for weekend periods of possession under Section 153.312(a)(1) during the regular school term:
    (A) beginning at the time the child's school is regularly dismissed;
    (B) ending at the time the child's school resumes after the weekend; or
    (C) beginning at the time described by Paragraph (A) and ending at the time described by Paragraph (B);
(2) for Thursday periods of possession under Section 153.312(a)(2):
    (A) beginning at the time the child's school is regularly dismissed;
    (B) ending at the time the child's school resumes on Friday; or
    (C) beginning at the time described by Paragraph (A) and ending at the time described by Paragraph (B)[.]

*Id.* § 153.317(a)(1), (2). Section 153.317 contains other provisions pertaining to possession during spring vacation, Christmas, Thanksgiving, Father's Day, Mother's Day, and other school holidays or in-service days. *Id.* § 153.317(a)(3)-(9).

Willis's Petition to Modify did not provide notice that he was requesting to have Lisa on the weekends from after school on Thursday until Monday morning. And his Petition did not reference nor correspond to any of the related parts of Sections 153.312 or 153.317 of the Family Code. He only requested "the court to order that Petitioner shall have extended standard possession[.]" Issues not raised in

17

the pleadings can be tried by express or implied consent of the parties. *See* Tex. R. Civ P. 67; *Ingram v. Deere*, 288 S.W.3d 886, 893 (Tex. 2009). Appellant's brief does not challenge the trial court's finding that "Petitioner's Pleadings do not support a request to change the pickup and surrender of the child[,]" nor does Appellant argue that the issue was tried by consent. The record reflects that Appellee's counsel made an objection at the hearing by stating, "that's not what he pled for." The Texas Supreme Court has explained that "a suit properly invoking the jurisdiction of a court with respect to custody and control of a minor child vests that court with decretal powers in all relevant custody, control, possession and visitation matters involving the child." *Leithold v. Plass*, 413 S.W.2d 698, 701 (Tex. 1967). Because courts have broad discretion in such proceedings, the "[t]echnical rules of practice and pleadings are of little importance in determining issues concerning the custody of children." *Id.*

As outlined above, in the trial court's Order denying the Petition to Modify, the trial court found:

> 10. Petitioner's request for extended standard possession was denied because it was not in the best interest of the child.
>
> . . .
>
> 13. The Court finds that Petitioner's Pleadings do not support a request to change the pickup and surrender of the child.
> 14. The Court does not find a material change in circumstances sufficient to justify modification of the pickup and surrender of the child.

18

We note on appeal that Willis does not challenge the trial court's finding number 14, that there was no material change in circumstances sufficient to justify modification.

Here, the trial court failed to find that there had been a material and substantial change of circumstances—an issue on which Willis bore the burden of proof. *See In re R.L.R.*, No. 09-15-00449-CV, 2017 Tex. App. LEXIS 8946, at *9 (Tex. App.—Beaumont Sept. 21, 2017, no pet.) (mem. op.) (citing *Rumscheidt v. Rumscheidt*, 362 S.W.3d 661, 667 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). The evidence is legally insufficient only if it conclusively establishes the contrary finding, so here the evidence would have to conclusively establish a substantial change. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam) (a legal sufficiency challenge should be sustained only if the contrary proposition is conclusively established). In making this determination, we must view the evidence in the light most favorable to the trial court's actions and indulge every legal presumption in favor of the judgment. *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We also bear in mind that the trial court is the sole judge of the witnesses' credibility and the weight to be given to the evidence. *See London v. London*, 192 S.W.3d 6, 14 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

We conclude that even assuming without deciding that Willis's Petition to Modify provided adequate notice of the request to change the pickup and surrender of the child, or that the relief he requested was tried by consent, we cannot say the trial court abused its discretion in denying Willis's request to modify his periods of possession for two reasons. First, based on the record, the trial court reasonably could have concluded that there had not been a material and substantial change in circumstances. Second, on this record, the trial court could have reasonably concluded that the expanded weekend possession schedule that Willis sought was not in the child's best interest. There was some evidence in the record that supports the trial court's decision that there was no material and substantial change in circumstances to warrant a modification. For example, Willis agreed on cross-examination that Sandra and Willis's living arrangements had not changed since Willis and Sandra had entered into the mediated settlement agreement that was incorporated into the Final Divorce Decree. Willis also agreed on cross-examination that, under the settlement agreement, he had agreed to pick up and drop off at Sandra's house. He also agreed that Sandra had already worked with him regarding his work schedule so that he could maximize his time with Lisa.

There was also some evidence in the record that supports the trial court's decision that the modification was not in Lisa's best interest. For example, at the time of the hearing, Lisa was four-and-a-half years old, and she was about to start

20

pre-K. Sandra testified that Lisa was not "a morning person[,]" and that Lisa typically sleeps another hour or two after Sandra drops Lisa off at Sandra's grandmother's house at about 7:45 a.m. Sandra was concerned about Lisa having to ride to Willis's home on Thursday afternoon "just to spend the night [] and then driving back to school the next morning." Sandra did not think it was in Lisa's best interest, given her age, to be doing so much traveling. Willis testified that he works a shift schedule and sometimes misses half a day with Lisa or his fifth weekend of the month with Lisa. He agreed that if he was working, his wife would be able to pick up and drop off Lisa. He also testified that Lisa typically wakes up at about 6:30 a.m. at his house, and he did not see a benefit to Lisa for having an extra fifty minutes of sleep. Willis further testified that he lives "about 50.3 miles[]" from Lisa's school, and the drive takes "[r]oughly 48, 50 minutes." Willis was not aware that Lisa was attending First Baptist day care, and he guessed at what grade level she would be in school the next year.

Deferring to the trial court as the factfinder who determines the credibility and weight of evidence, viewing the evidence in the light most favorable to the trial court's actions, and indulging every legal presumption in favor of the judgment, we cannot say the trial court erred by finding that Willis's request for extended standard possession and modification was not in Lisa's best interest. *See In re J.F.-G.*, 627 S.W.3d at 312. We cannot say that there was "no basis in law or fact" for the trial

21

court's findings and its order, nor was the relevant testimony entirely "speculative 'possibilities' and 'maybes'", as Appellant suggests in his brief. Sandra testified about Lisa's typical sleep needs. Willis testified about the amount of driving that would be required and the extent to which his shift work affects his time with Lisa. The trial court's Findings of Fact and Conclusions of Law stated that it considered Lisa's age, her emotional and physical needs now and in the future, and the distance between Willis's and Sandra's residences. Based on the record before us, we conclude the trial court did not abuse its discretion in rendering the Order in Suit to Modify Parent-Child Relationship as to Lisa. *See In re R.A.*, 2022 Tex. App. LEXIS 7575, at *13. We overrule Appellant's issue.

Having overruled Appellant's issue, we affirm the trial court's order.

AFFIRMED.

LEANNE JOHNSON<br>
Justice

Submitted on July 31, 2024
Opinion Delivered August 15, 2024

Before Golemon, C.J., Johnson and Chambers, JJ.

22