In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-24-00195-CV
IN THE INTEREST OF A.R.-M.B.

**On Appeal from the 418th District Court
Montgomery County, Texas
Trial Cause No. 14-03-03298-CV**

## MEMORANDUM OPINION

This is an appeal of a final Agreed Order in Suit to Modify Parent-Child Relationship after a bench trial. Appellant Mother appeals the judgment, raising two issues: (1) she argues that the evidence was not sufficient to support the trial court's failure to modify the previous order to give Mother additional possession of and access to the child, "Anna,"[1] and (2) she argues that the trial court abused its discretion by rendering an order that was not in the child's best interest and denying Mother's requested modification. As explained below, we affirm.

---

[1] We use pseudonyms to refer to the parties and lay witnesses. *See* Tex. Fam. Code Ann. § 109.002(d).

## Pretrial Procedure

On June 1, 2023, the Office of the Attorney General ("AG") filed a Suit for Modification of Child Support Order relating to child support for Anna. The order to be modified was the Order to Modify Suit Affecting the Parent-Child Relationship that was signed on November 6, 2014. The AG alleged that circumstances of the child or of a person affected by the previous order had materially and substantially changed.

On June 22, 2023, Mother also filed a Petition to Modify Parent-Child Relationship, asking that she be appointed Joint Managing Conservator of her daughter, Anna, with the exclusive right to designate Anna's primary residence and to make educational decisions, and that she have primary custody of Anna. In the alternative, Mother asked the trial court to change the meeting place for exchange of the child to a location halfway between Mother's and Father's homes. Mother also asked the trial court to terminate the support payments previously ordered and to require Father to pay child and medical support for Anna. Anna was almost 12 years old when Mother filed her Petition.

Father filed a general denial Answer and argued that Mother's Petition was "filed improperly" because the AG had already filed a pending modification suit. The clerk's record in this case includes a Petition for Writ of Habeas Corpus that

2

Father filed in August of 2023 that alleged that Mother was illegally restraining Anna from Father's possession. The AG nonsuited its lawsuit on August 29, 2023.

Mother filed a First Amended Petition on March 25, 2024, retaining the previous allegations in the Original Petition and alleging that there had been a material change in the child's circumstances since rendition of the previous order, and that the modifications Mother requested were in Anna's best interest.

Evidence at the Bench Trial

Mother's Testimony

Mother testified that she lived with "Connor," her common-law husband, and their two children, "Risa" and "Howie," who are younger than Anna. Mother testified that she has a car, a paid-off home, and income, and if Anna came to live with her, Anna and Risa would share a room. Mother stated that she was not working at the time of trial, and during the day she homeschooled Risa. According to Mother, Anna could be covered for health insurance through Connor's job. Mother testified that Connor could not take two days off of work in a row for trial but that she had filed a motion for him to testify by Zoom.

Mother testified that she had "looked into" school districts in her area and that she would give Anna the choice of home schooling or going to school. According to Mother, she had missed no visitations with Anna, but she had not attended any of Anna's school activities because she was not invited. Mother also testified that Anna

has dyslexia. Mother testified that she had asked to be "put on the [school's] paperwork" but her request was denied.

Mother testified that she was concerned about the food restrictions Father imposed on Anna at Father's house, such as being denied soup, getting the wrong snacks, and having to make her own food. Mother was also concerned because everything she bought for Anna was taken away by Father. Mother also expressed a concern about Anna's medical care regarding Anna's syndactyly fingers, that Father was not present for Anna's hand surgery, that Anna was not allowed to use her crutches at Father's house, and that neither Father nor his wife were available to pick up Anna when she hurt her foot at school. Mother was concerned that Father had taken Anna's phone away so Anna could not talk to Mother at Father's house. According to Mother, she had not talked to Father about her concerns because Mother believed that Father and his wife would retaliate.

On cross-examination, Mother testified that she was currently staying in Willis with her friend "Alene," that she had also stayed in Conroe to help members of her "adopted family[,]"but her home is in Edna, where her husband works and which is about three hours from Father's home. Mother testified that she and Connor married in 2012, but they got divorced, and at the time of trial they were "common-law married." She testified that she had an associate's degree in medical

4

reimbursements, and that she was pursuing another degree in alternative medicine, but she did not work at the time of trial.

Mother agreed that when Anna hurt her foot, Father had taken Anna to the doctor and did what the doctor advised. Mother also agreed that she took Anna to a different doctor because Anna "was in pain." She agreed she had concerns about Anna's mental health, but she had not talked with Father about it nor tried to get an appointment with a counselor. Mother also testified she had not attended any of Anna's ARD meetings regarding Anna's educational needs.

Mother agreed she has been behind on child support "a couple months[,]"but that at one point, she was over $5,000 behind even though her monthly child support was $150. Mother believed she was "about three months behind" in her child support payments at the time of trial.

Mother denied ever talking with Father about relinquishing her parental rights, although she remembered asking what needed to be done to sign over her parental rights. Mother also denied knowing about a writ of habeas in August of 2023 for her to return Anna to Father. According to Mother, she had not talked with Father about any of her concerns about his home or Anna's food. Mother also testified she had not talked with Father about concerns over Anna's phone, but she had told Anna that if she was scared that she was going to get in trouble, that she should delete her text messages with Mother. Mother recalled that a couple of times she told Father that

she forgot it was her weekend to have Anna. Mother testified that she did not know Anna's pediatrician.

Testimony of "Betty"

Betty testified that she lived in Conroe, and she and Mother had been best friends for twenty years. Betty knew Anna, and she had taken care of Anna when she was born, she no longer has regular contact with Anna, and she had seen Anna once about a month before trial. According to Betty, Mother and Anna have "the perfect mother daughter bond." On cross-examination, Betty testified that at one point, Mother stayed with her when Betty's family was in a car accident. Betty testified that she did not like Connor, but she did not know if Connor had been aggressive with Mother.

Testimony of "Jim"

Jim testified that he is Mother's father, he works as a welder in Conroe, and he lives on fourteen acres with his fifteen-year-old son. He testified that Mother has a good relationship with Anna, and he would not have any problems with Anna going to live with Mother. On cross-examination, he testified that he had been convicted of felony possession of methamphetamine, and he completed probation for that offense. According to Jim, he had not discussed with Mother any plans for her to move to a trailer on his property.

<u>Father's Testimony</u>

Father testified that he is a master plumber and lead installer for a large plumbing company, and his wife Lorrie is a dental assistant. In addition to Anna, he has four other children—one daughter older than Anna, a son the same age as Anna, a daughter younger than Anna, and a one-year-old son. He explained that he and his family live in a five-bedroom home in Cleveland on a five-acre tract, and Anna has her own room.

Father testified that he checks Anna's phone when she returns from Mother's home to "make sure [Anna's] not doing something she's not supposed to[]"and that he asks Anna to tell him when Mother is messaging Anna because Father does not want messages to be permanently deleted.

According to Father, Mother had not asked him anything about Anna's school, and Mother had not tried to find out about Anna's education or health care until after this lawsuit was filed. Father testified that when Anna had hand surgery, Mother chose to pay for everything, and Father sent her a copy of his insurance card and the name of Anna's pediatrician.

Father agreed that Anna was a picky eater at times, but he testified that the pantry and freezer are "well stocked," and there is never an objection from him as to what the children can eat except for certain foods that are set aside for school lunches. He also testified that there are hot pockets, burritos, and ramen noodles

7

available for Anna and the other children to heat up. Father was "adamant" that Anna should not be homeschooled because Anna "needs social skills, and you can only get social skills from a public environment."

Father recalled that there had been problems "[m]any times" with Mother being on time for exchanging Anna. He testified that he had never asked Mother to increase her child support, and at one point, Mother asked him to return some of the child support she had paid, but he did not return the money because the money was for Anna. Father also was concerned that Mother was telling Anna to delete text messages and "make sure he doesn't see them." Father explained that he filed the habeas petition because he had agreed for Mother to have Anna for extra time during the summer, but Mother told him she was not going to return Anna when school started, and it was important for Anna to come home to get ready for school.

On cross-examination, Father testified that he had not notified Mother of Anna's doctor's appointments because "she hasn't asked." Father did not inform Mother when he decided to hold Anna back in school, and he agreed that the insurance card he sent Mother for Anna's hand surgery did not have Anna's name on it, but it is a family insurance. Father recalled that Mother had asked him if holding Anna back a grade helped her because Mother was thinking about doing that with her daughter Risa. He recalled that he gave Anna's school the "court papers" when he and Lorrie registered Anna for school. Father did not remember whether he

designated Mother as an emergency contact. He agreed he did not forward Anna's extracurricular schedule to Mother because he did not have a schedule. Father testified that he thought Anna had some immature interests, such as coloring and playing with baby dolls. That said, Father agreed that Anna does her own laundry and she cooks for herself, but not all the time.

Lorrie's Testimony

Lorrie testified Mother had never asked her about Anna's schooling, but she agreed that she no longer talks with Mother. She testified that Father does homework with Anna regularly.

Post-Evidentiary Procedure

The trial court interviewed Anna after the parties finished presenting their witnesses, and no record was requested nor made of that interview. In ruling from the bench, the trial court stated that it found there had been a material and substantial change of circumstances, but it was making no modifications to the prior order except to award Father the exclusive right to apply for and maintain Anna's passport.

After the bench trial, the trial court signed an Agreed Order in Suit to Modify Parent-Child Relationship. The trial court ordered Father to continue as sole managing conservator and Mother as possessory conservator of Anna, that Mother pay Father $58.79 per month for "additional child support" for reimbursement of health insurance, and that all relief not expressly granted is denied.

9

Mother requested the trial court to make findings of fact and conclusions of law, and the trial court signed the Findings of Fact and Conclusions of Law that stated, in relevant part:

[] Multiple questions exist regarding [Mother's] stability. Around June of 2020, [Mother] suggested to [Father] that she wanted to have her parental rights to [Anna] terminated. [Mother] claims to be currently married, but testified that she and her "current husband" previously divorced and that they are now "common law" married. The man to whom [Mother] claims she is married neither appeared, nor testified, at trial. [Mother] is unemployed. [Mother] would allow [Anna] to decide whether she would attend public school or be "home schooled." No evidence was presented to confirm that [Mother's] 9 year old child (whom she allows to be "home schooled") is actually participating in a legitimate "home school" curriculum. [Mother] had never communicated with [Anna's] school until approximately 2 months prior to trial. [Mother] is often late for her scheduled periods of possession. [Mother] has been over $5,000.00 behind in her child support obligation, which is only $100.00 per month, and is currently 3 months behind. [Mother] previously retained possession of [Anna] beyond her court-ordered period of possession causing [Father] to have to file a "habeas" action to retrieve [Anna]. [Mother] has not communicated any of her "concerns" about [Anna] to [Father]. [Mother] has exhibited alienating behaviors, including encouraging [Anna] to delete messages between her and [Anna] in order to prevent [Father] from reading them.

[] Portions of [Mother's] testimony were found to be incredible.

[] [Father] provides a stable home and family life for [Anna]. [Anna] makes "A"s and "B"s in school, has perfect attendance, and is enrolled in extra-curricular activities. [Father] has met all of [Anna's] financial needs even though [Mother] has been inconsistent paying child support.
. . .
[] Any and all other relief requested by [Mother] would not be in the best interest of [Anna].
. . .

10

[] The modifications ordered by the court are in the best interest of the child and the circumstances of the child and/or a conservator have materially and substantially changed since November 6, 2014.

Mother timely filed a Notice of Appeal.

## Issues

Mother presents two issues on appeal. In her first issue, Mother argues that the trial court abused its discretion when it did not find sufficient evidence to modify the previous order's terms on possession, conservatorship, or rights and duties in Mother's favor. In her second issue, Mother argues that the modification the trial court granted is not in Anna's best interest, and the trial court should have granted the modification that Mother requested.

## Standard of Review

In a modification suit, whether the moving party has met the burden of establishing a material and substantial change is a threshold question. *See In re R.A.*, No. 09-20-00275-CV, 2022 Tex. App. LEXIS 7575, at *17 (Tex. App.—Beaumont Oct. 13, 2022, no pet.) (mem. op.) (citing *In re T.M.P.*, 417 S.W.3d 557, 563 (Tex. App.—El Paso 2013, no pet.)). Determination of a material and substantial change is fact specific and not controlled by a set of guidelines. *Id.* (citing *Arredondo v. Betancourt*, 383 S.W.3d 730, 734 (Tex. App.—Houston [14th Dist.] 2012, no pet.)). To be entitled to a modification, the party requesting the modification must prove (1) the modification requested is in the child's best interest, and (2) the

circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the prior order. *See* Tex. Fam. Code Ann. § 156.101(a)(1)(A).

The trial court is given wide latitude in determining what is in the best interest of a minor child, and we review a trial court's decision pertaining to a modification order under an abuse of discretion standard. *See In re R.A.*, 2022 Tex. App. LEXIS 7575, at *13 (citing *Smith v. Karanja*, 546 S.W.3d 734, 737 (Tex. App.—Houston [1st Dist.] 2018, no pet.)); *see also Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re E.C.C.*, 539 S.W.3d 425, 429 (Tex. App.—Beaumont 2018, pet. denied). A trial court abuses its discretion if it acts arbitrarily or without reference to any guiding rules or principles. *See In re G.J.G.*, No. 09-21-00396-CV, 2023 Tex. App. LEXIS 9542, at **11-12 (Tex. App.—Beaumont Dec. 21, 2023, no pet.) (mem. op.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985); *In re M.A.M.*, 346 S.W.3d 10, 13 (Tex. App.—Dallas 2011, pet. denied)). A trial court does not abuse its discretion if its order is supported by some evidence of a substantial and probative character. *See In re L.J.L.*, No. 09-21-00286-CV, 2023 Tex. App. LEXIS 6568, at *12 (Tex. App.—Beaumont Aug. 24, 2023, no pet.) (mem. op.). In determining whether some evidence supports the decision, we review the evidence in the light most favorable to that decision, and we indulge every presumption in its favor. *See In re L.K.S.*, No. 09-23-00364-CV, 2024 Tex. App.

12

LEXIS 5879, at *14 (Tex. App.—Beaumont Aug. 15, 2024, no pet.) (mem. op.) (citing *In re G.E.D.*, No. 05-17-00160-CV, 2018 Tex. App. LEXIS 8, at **11-12 (Tex. App.—Dallas Jan. 2, 2018, no pet.) (mem. op.)).

In this bench trial, the trial court is the sole judge of the credibility of the witnesses and determines the weight to be assigned to their testimony, and our review must defer to the trial court's factual determinations. *See In re J.F.-G.*, 627 S.W.3d 304, 312 (Tex. 2021) (citing *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)); *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). The factfinder is free to believe one witness and disbelieve another, and reviewing courts may not impose their own opinions to the contrary. *See City of Keller*, 168 S.W.3d at 819. As such, reviewing courts must assume that the factfinder decided all credibility questions in favor of the findings, and chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *See id.* at 819-20. We review a trial court's findings of fact for legal sufficiency, and its conclusions of law under a de novo standard of review. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible. *See In re J.F.-G.*, 627 S.W.3d at 312 (citing *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

When findings of fact are filed and are unchallenged, they occupy the same position and are entitled to the same weight as a jury's verdict; they are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the finding. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *In re Marriage of Karsagi*, No. 13-20-00077-CV, 2022 Tex. App. LEXIS 1934, at *20 (Tex. App.—Corpus Christi–Edinburg Mar. 24, 2022, pet. denied) (mem. op.). Thus, we defer to unchallenged findings of fact that are supported by some evidence. *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 523 (Tex. 2014). We overrule an appellant's issue when unchallenged findings or conclusions independently support the trial court's judgment or ruling. *See Patton v. Echols*, No. 09-22-00334-CV, 2024 Tex. App. LEXIS 7751, at *51, *58 (Tex. App.—Beaumont Oct. 31, 2024, no pet.) (mem. op.) (citing *Howeth Invs., Inc. v. City of Hedwig Vill.*, 259 S.W.3d 877, 889 (Tex. App.— Houston [1st Dist.] 2008, pet. denied)).

"The best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child." Tex. Fam. Code Ann. § 153.002(a). On appeal, we assess the trial court's best-interest finding by using the *Holley* factors. *See In re D.E.T.*, No. 09-22-00197-CV, 2023 Tex. App. LEXIS 5811, at **18-19 (Tex. App.—Beaumont Aug. 3, 2023, no pet.) (mem. op.) (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)).

14

The *Holley* factors include (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child in the present or future; (4) the parental abilities of the individuals involved; (5) the programs available to those individuals to promote the child's best interest; (6) the plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371-72. The *Holley* factors are not exclusive, and the evidence that the factfinder considers in making a best-interest decision need not address all the *Holley* factors. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *In re K.R.K.-L.H.*, 671 S.W.3d 761, 770 (Tex. App.—Beaumont 2023, pet. denied). The factfinder may consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *See In re K.P.*, No. 09-22-00049-CV, 2022 Tex. App. LEXIS 5787, at **29-30 (Tex. App.—Beaumont Aug. 11, 2022, pet. denied) (mem. op.) (citing *In re R.J.*, 568 S.W.3d 734, 751-52 (Tex. App.—Houston [1st Dist.] 2019, no pet.)).

Analysis

Mother does not challenge any specific findings of fact that the trial court made. Mother argues generally that the trial court failed to address any of Mother's concerns, "[d]espite the evidence and testimony given[.]" We defer to the trial court as factfinder and assume that the factfinder decided all credibility questions in favor

15

of the findings of fact, and it chose what testimony to disregard in a way that was in favor of the findings, if a reasonable person could do so. *See City of Keller*, 168 S.W.3d at 819-20. And we defer to unchallenged findings of fact that are supported by some evidence. *See In re J.F.-G.*, 627 S.W.3d at 312; *Tenaska Energy, Inc.*, 437 S.W.3d at 523.

At trial, Mother admitted that she had not attended any of Anna's school activities, nor had she made efforts to have the school notify her after the school denied her request to be put on the "paperwork." Mother testified that although she had concerns about Anna's food, medical care, and phone usage, she had not talked to Father and his wife about her concerns for fear they would "retaliate." Mother admitted she had gotten behind on her child support obligations of $150 per month, and that at one point, she was over $5,000 behind. Mother first testified that she was married to Connor, but she agreed they had divorced, and at the time of trial they were "common law married." Mother also testified that, at times, she has stayed with friends and her "adopted family" in the Conroe area. Mother testified that she did not work, that she homeschooled her other daughter, and that if Anna came to live with her, she would let Anna—who was twelve years old at the time of trial—decide whether to go to school or be homeschooled. Mother also admitted she had asked Father what needed to be done for her to sign over her parental rights to Anna. Mother admitted that she has instructed Anna to delete text messages with Mother.

16

Father testified that, not only had Mother gotten behind on child support payments, but she also asked him to return some of the payments to her, and she was often late when dropping off or picking up Anna. Father testified that although he had allowed Mother to have possession of Anna for extra time during the summer, one time Mother had not returned Anna as agreed, and he filed a habeas petition to get Anna back home. Father testified that Mother had not asked about Anna's schooling or medical care. Although he described Anna as a picky eater, he also testified that he and his wife keep snacks in the house that the children can have when they want. Father further testified that Mother instructs Anna to delete her text messages so that Father cannot read them. Father's wife Lorrie testified that Mother had never asked her anything about Anna's schooling.

To the extent that Mother's and Father's testimony differs, we assume that the trial court as factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found to have been not credible. *See In re J.F.-G.*, 627 S.W.3d at 312 (citing *In re J.F.C.*, 96 S.W.3d at 266). Mother's brief fails to challenge any specific findings of fact that the trial court made, and we defer to unchallenged findings of fact that are supported by the record. *See Tenaska Energy, Inc.*, 437 S.W.3d at 523. We also defer to the trial court's credibility determinations in a bench trial. *See In re J.F.-G.*, 627 S.W.3d at 312. Therefore, we conclude that

17

some evidence supports the trial court's decision to deny Mother's requested modifications and its determination of what was in Anna's best interest, and we find no abuse of discretion. *See Holley*, 544 S.W.2d at 371-72; *In re R.A.*, 2022 Tex. App. LEXIS 7575, at *13. We overrule both of Mother's issues on appeal.

Having overruled Mother's issues, we affirm the trial court's Agreed Order in Suit to Modify Parent-Child Relationship.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on May 19, 2025
Opinion Delivered July 10, 2025

Before Johnson, Wright and Chambers, JJ.